AMSDEN, The CORNELIA.
[See The Cornelia Amsden, Case No. 3,234.]

AMSDEN, (TORRANCE v.)
[See Torrance v. Amsden, Case No. 14,103.]

AMSINCK, (BEAN v.)
[See Bean v. Amsinck, Case No. 1,167.]

## Case No. 339.

### The AMSTEL.

[Blatchf. & H. 215.][1]

District Court, S. D. New York. March 22, 1831.

MARITIME LIENS—STEVEDORE'S LIEN — PERSONAL OBLIGATIONS OF OWNER.

1. A stevedore has no lien upon a vessel for his services in discharging her in port, and cannot sue in rem in admiralty for his compensation.

[Cited in The Joseph Cunard, Case No. 7,535; Cox v. Murray, Id. 3,304; The A. R. Dunlap, 513; Miller v. The Maggie P., 32 Fed. 301.]

[Overruled in the George T. Kemp, Case No. 5,341. Questioned in Roberts v. The Windermere, 2 Fed. 723; The Canada, 7 Fed. 121; The Gilbert.Knapp, 37 Fed. 211.]

[See McDermott v. The S. G. Owens, Case No. 8,748; Paul v. The Ilex, Id. 10,842; The Circassian, Id. 2,722; The Esteban, 31 Fed. 920; The Wyoming, 36 Fed. 493; and contra, Florez v. The Scotia, 35 Fed. 916.]

2. Where a debt, which might otherwise have been a lien on a vessel, is contracted under an explicit agreement with the master individually, that affords evidence that the creditor has agreed to look only to the personal responsibility of the master, or, at most, of the owner, and that the vessel is exonerated from any lien.

In admiralty. This was a libel in rem by a stevedore for services performed in discharging a vessel in port. The services were rendered upon an express agreement with the master for a stipulated sum.

J. D. De Lacey, for libellant.
Edwin Burr and Erastus C. Benedict, for claimant.

BETTS, District Judge. This action is resisted, in the first place, on the ground that the libellant has no lien upon the vessel, because his services as a stevedore were not, in their nature, maritime, and were really performed on land. It is to be remarked that the services consisted of nothing done to the vessel in her·repairing or refitment, but of labor expended, partly on board and partly on shore, in discharging her cargo. This description of service has never yet been recognized as of a privileged order. It does not fall within the extensive list of debts privileged by the civil law; nor does it seem to be comprehended within the principle upon which a lien or privilege is allowed.

A vessel is made chargeable with certain services, because they are necessary for her preservation or useful employment. Under this head is embraced the compensation of material men and others, for labor done upon the vessel, or in her navigation, or in promoting the health or comfort of the ship's company on a voyage. The language of the civil law has direct reference to this description of service; and the French law, which gives a broader application to the privilege than has ever been yielded in England, does not extend it beyond those engaged in labors connected with the equipment or refitment of the vessel, either in respect to the vessel herself, or her necessary stores, her crew, &c., or in services performed on her during her voyage. The American law has never gone beyond the doctrines recognized in the continental courts of Europe; and it seems to me that it would be a departure from the well-understood terms of the maritime law in this respect, and from the principle which pervades its enactments; to give a lien upon the vessel to a claim of the character of the one now under consideration. It in no respect merits such privilege, any more than do the services of any other class of laborers in any work connected with the business of the ship. It does not seem to differ from a transportation of the cargo from one place to another on the land; and the cartman who hauls off the lading and facilitates the discharge of the vessel, aids her in the same manner as the laborer who raises the cargo from her hold.

Independently of this objection to the maintenance of the present demand here, because of its character, there are other reasons why it cannot be enforced as a lien on the vessel. The testimony shows that it accrued under an explicit agreement with the master; and the whole nature of the contract shows that the personal responsibility of the master, or, at most, of the owner, was alone looked to. This would be sufficient of itself to exonerate the vessel, in a case where she might be chargeable in the absence of any personal credit. The mere circumstance that the price was fixed for which the services were to be rendered, will not free the vessel from a lien which would otherwise exist, because there is in this nothing inconsistent with the continuance of the lien, and nothing from which a waiver of it can be implied. But, when there is a clear unreserved agreement with the master individually, specifying the terms and mode of payment, the inference will be exceedingly forcible, that the personal responsibility alone was contemplated, and the creditor will be compelled to rely upon that. Hutton v. Bragg, 7 Taunt. 14; Ex parte Lewis, [Case No. 8,310;] Murray v. Lazarus, [Id. 9,962.] Upon both grounds, my judgment is against this action. Libel dismissed, with costs.

[1][Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]